LAW OFFICES OF HOVANES MARGARIAN
HOVANES MARGARIAN (246359)
13425 Ventura Blvd., Suite 303
Sherman Oaks, California 91423
Telephone:      (818) 990-0418
Facsimile:      (818) 990-1418
hovanes@margarianlaw.com

Attorneys for Plaintiff,
GAYANE KHATUONIAN



FILED
CLERK U.S. DISTRICT COURT

DEC - 5 2013

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| GAYANE KHATUONIAN, as an individual, on behalf of herself, all others similarly situated, and the general public,<br><br>    Plaintiffs,<br><br>vs.<br><br>BMW OF NORTH AMERICA, LLC, a Delaware Limited Liability Company; and DOES 1 through 100, inclusive,<br><br>    Defendants. | Case No.: 2:13-CV-07975-SVW-SH<br>(Class Action)<br><br>Judge: Hon. Stephen V. Wilson<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES:** *First amended complaint*<br><br>1. **Breach of Express Warranty**<br><br>2. **Breach of the Implied Covenant of Good Faith and Fair Dealing**<br><br>3. **Breach of the Magnuson-Moss Warranty Act – Express Warranty**<br><br>4. **Violation of the California Consumer Legal Remedies Act ("CLRA"), Civil Code § 1750 *et seq.*;**<br><br>5. **Violation of the California Unfair Competition Law ("UCL"), Business and Professions Code § 17200, *et seq.***<br><br>**DEMAND FOR JURY TRIAL** |



RECEIVED BUT NOT FILED
CLERK, U.S. DISTRICT COURT

DEC 5 2013

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

///

---

CLASS ACTION FIRST AMENDED COMPLAINT FOR DAMAGES

NOW COMES the Plaintiff, GAYANE KHATUONIAN, as an individual, on behalf of herself, all others similarly situated, and the general public, by and through Plaintiff's attorneys, with the Class Action First Amended Complaint for Damages against Defendants, BMW OF NORTH AMERICA, LLC, a Delaware Limited Liability Company; and DOES 1 through 100, inclusive, alleges and affirmatively states as follows:

## I

## INTRODUCTION

1.   Plaintiff brings this action on behalf of herself and all other similarly situated persons residing in California and/or the United States who leased and/or purchased vehicles manufactured by Defendant, BMW of North America, LLC, a Delaware Limited Liability Company ("BMWNA") equipped with the Auto Start Stop function that causes the engine to turn off when the vehicle comes to a complete halt and fails to restart when the driver accelerates, creating a possibly life-threatening situation, described in further detail within this Complaint.

2.   This is a civil action alleging Breaches of Express Warranty, Breach of the Implied Covenant of Good Faith and Fair Dealing, Breach of the Magnuson-Moss Warranty Act – Express Warranty, Violation of the California Consumer Legal Remedies Act ("CLRA") (Civil Code §1750, *et seq.*), and violation of the California Unfair Competition Law ("UCL") (Business and Professions Code § 17200, *et seq.*) for Defendant BMWNA's unlawful, unfair, fraudulent and deceptive business acts or practices, Defendant's pattern and practice of fraudulently, unfairly, deceptively, and unlawfully marketing, advertising, promoting and leasing/selling various vehicles with the Auto Start Stop function that causes the engine to turn off when the vehicle comes to a complete halt and fails to restart when the driver accelerates, creating a possibly life-threatening situation.

## II

## NATURE OF ACTION

3.   Beginning on or before 2011, BMWNA manufactured, sold and distributed certain models of vehicles described below that contain a defective Auto Start Stop function that causes the engine to turn off when the vehicle comes to a complete halt and fails to restart when the driver accelerates, creating a possibly life-threatening situation.

CLASS ACTION FIRST AMENDED COMPLAINT FOR DAMAGES

4.   Plaintiff files this class action on behalf of herself, all others similarly situated and the general public for damages and/or restitution, as appropriate, for the Class from Defendant BMW of North America, LLC (hereinafter "BMWNA") for developing, designing, manufacturing, distributing and selling vehicles with a defective Auto Start Stop function. The models of vehicles with a defective Auto Start Stop function include at least the following: BMW Model Years 2011-2014 3-Series models; Model Years 2012-2014 5-Series models; Model Years 2012-2014 6-Series models; Model Years 2012-2014 Z4 models; Model Years 2012-2014 X3 models; Model Years 2013-2014 7-Series models; Model Years 2013-2014 X1 models; and Model Year 2014 X5 models (hereinafter referred to as the "Subject Vehicle(s)").

### III

### <u>JURISDICTION AND VENUE</u>

5.   The Court has original jurisdiction over this case as the aggregate amount in controversy for the Class exceeds $5,000,000. Plaintiff is a resident of the State of California. Defendant is a Limited Liability Company organized under the laws of the State of Delaware. Defendant's executive office and principal place of business is in New Jersey. An unincorporated association is, under 28 U.S.C. § 1332(d)(10), a citizen of the state where it has its principle place of business and the state under whose laws it is organized. Diversity, therefore, can be found because, under 28 U.S.C. § 1332(d)(2)(A), a member of the class of plaintiffs is a citizen of a state different from any defendant. No exceptions to jurisdiction under 28 U.S.C. § 1332(d) apply. Accordingly, this Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(d) also known as the Class Action Fairness Act.

6.   Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b)(1) because plaintiff, Khatuonian, resides in this judicial district. Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

7.   The Court has jurisdiction over the defendant identified herein because it is an individual, association, or corporation that is either authorized to conduct or, in fact, does conduct substantial business in this district.

8.   Venue is proper in this district because defendant does business in the State of California,

CLASS ACTION FIRST AMENDED COMPLAINT FOR DAMAGES

1    they do not list a principal place of business in California with the California Secretary of State, and

2    their principal place of business is in New Jersey.

3                                                    IV

4                                INTRADISTRICT ASSIGNMENT

5         9.   Assignment to the Western Division is proper because plaintiff, Gayane Khatuonian, resides

6    in this division and a substantial part of the events or omissions giving rise to the claims occurred in this

7    division.

8                                                    V

9                                                PARTIES

10        10.   Plaintiff, GAYANE KHATUONIAN ("Plaintiff"), is and was at all times relevant herein an

11   individual residing in Los Angeles County, State of California. Plaintiff leased and is in possession of

12   one of the Subject Vehicles, a 2012 BMW 528I, bearing the VIN WBAXG5C55CDW85511, which

13   was manufactured, sold or otherwise delivered to Plaintiff with the defective Auto Start Stop function at

14   issue in this case and as described herein.

15        11.   Plaintiff appears in this action on behalf of herself, on behalf of all others similarly situated,

16   and pursuant to Business and Professions Code §§ 17200 *et seq.* and 17500 *et seq.*, on behalf of the

17   general public in her capacity as a private attorney general.

18        12.   Defendant, BMW OF NORTH AMERICA, LLC (hereinafter "BMWNA" or "Defendant") is

19   and was at all times relevant herein a Delaware Limited Liability Company with its principal place of

20   business in New Jersey. BMWNA is licensed to do, and is doing business throughout the United States

21   and in the State of California. BMWNA transacts business in Los Angeles County, California, and at all

22   relevant times designed, manufactured, promoted, marketed, distributed, and/or leased/sold the Subject

23   Vehicles that are the subject of this Complaint, throughout the United States including the State of

24   California. Defendant BMWNA has significant contacts with Los Angeles County and the activities

25   complained of herein occurred, in whole or in part, in Los Angeles County.

26        13.   Plaintiff is informed and believes, and based thereon alleges that Defendants DOES 1

27   through 100 are corporations, or are other business entities or organizations of a nature unknown to

28   Plaintiff.

CLASS ACTION FIRST AMENDED COMPLAINT FOR DAMAGES

14.   Plaintiff is unaware of the true names of Defendants DOES 1 through 100.  Plaintiff sues said defendants by said fictitious names, and will amend this Complaint when the true names and capacities are ascertained or when such facts pertaining to liability are ascertained, or as permitted by law or by the Court.  Plaintiff is informed and believes that each of the fictitiously named defendants is in some manner responsible for the events and allegations set forth in this Complaint.

15.   Plaintiff is informed, believes, and based thereon alleges that at all relevant times, each Defendant was a developer, designer, manufacturer, distributor and lessor/seller of vehicles, was the principal, agent, partner, joint venturer, officer, director, controlling shareholder, subsidiary, affiliate, parent corporation, successor in interest and/or predecessor in interest of some or all of the other Defendants, and was engaged with some or all of the other defendants in a joint enterprise for profit, and bore such other relationships to some or all of the other Defendants so as to be liable for their conduct with respect to the matters alleged in this complaint. Plaintiff is further informed and believes, and based thereon alleges that each Defendant acted pursuant to and within the scope of the relationships alleged above, and that at all relevant times, each Defendant knew or should have known about, authorized, ratified, adopted, approved, controlled, aided and abetted the conduct of all other Defendants. As used in this Complaint, "Defendants" means "Defendants and each of them," and refers to the Defendants named in the particular cause of action in which the word appears and includes BMWNA and DOES 1 through 100.

16.   At all times mentioned herein, each Defendant was the co-conspirator, agent, servant, employee, and/or joint venturer of each of the other Defendants and was acting within the course and scope of said conspiracy, agency, employment, and/or joint venture and with the permission and consent of each of the other Defendants.

17.   Plaintiff makes the allegations in this Complaint without any admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proving, or persuading, and Plaintiff reserves all of Plaintiff's rights to plead in the alternative.

## VI

## FACTS COMMON TO ALL CAUSES OF ACTION

18.   This class action lawsuit is brought on behalf of individual consumers who purchased or

leased various models of BMW vehicles that were defectively designed and/or manufactured. The defects are inherent in all of the Subject Vehicles and render the vehicles unsafe for driving. As a result, the value of the Subject Vehicles has been significantly impacted.

19.   Specifically, the vehicles that are the subject of this action include all BMW Model Years 2011-2014 3-Series models; Model Years 2012-2014 5-Series models; Model Years 2012-2014 6-Series models; Model Years 2012-2014 Z4 models; Model Years 2012-2014 X3 models; Model Years 2013-2014 7-Series models; Model Years 2013-2014 X1 models; and Model Year 2014 X5 models. All of these vehicles were manufactured, marketed, sold and/or leased by BMW through its official dealers throughout the United States.

### A. BMW's Advertising

20.   On or before 2011, BMWNA announced with much fanfare the development of its new Auto Start Stop function. BMWNA represented to the public that this new technology would be a "clever way to save fuel" and that driving comfort and driving safety would not be affected by the Auto Start Stop function.

21.   Specifically, BMWNA's uniform advertising that was presented to consumers in various formats stated:

"The Auto Start Stop function turns off the engine each time the vehicle comes to a complete halt – such as at traffic lights – and restarts it automatically. A reduction in fuel consumption is the result."

"The principle is simple: if the engine is not running, it cannot consume fuel. The Auto Start Stop function turns off the engine whenever it is not needed. In a traffic jam or in stop-and-go traffic, simply putting your BMW into neutral and taking your foot from the clutch will activate the function… To set off again, just put your BMW back into gear: the moment you depress the clutch, the engine immediately springs back to life and you can drive on without a moment's delay."

"Driving comfort and driving safety are not affected by the Auto Start Stop function."

"If necessary for comfort or safety, the control unit will automatically restart the engine: for example, if the vehicle begins to roll, the battery charge falls too low or condensation forms on the windscreen."

"The system recognizes the difference between a temporary stop and the end of the trip."

///

"When used consistently, the Auto Start Stop function delivers significant reduction in fuel consumption and CO2 emissions."

22.  In addition to promoting its vehicles through brochures handed to consumers, the Defendant also published numerous television and magazine advertisements.

23.  The Defendant's advertising not only promoted the performance of the Auto Start Stop function, but it also heavily promoted the safety of its vehicles in general.

24.  Plaintiff observed the Defendant's advertisements in magazines, Internet, and television and received the brochures distributed by Defendant's dealers. Based on these advertisements, Plaintiff believed that that Subject Vehicle would meet BMWNA's advertised standards. Plaintiff also believed that her vehicle would be manufactured to the highest safety standards and would be free from material defects. Finally, Plaintiff believed that her "ultimate driving machine" would retain its value and, in fact, outperform other similar vehicles with respect to depreciation.

25.  Unbeknownst to Plaintiff and the public, the Defendant's advertising was false and misleading. Specifically, the "Ultimate Driving Machines" promoted by the Defendant contained serious design flaws that render the Subject Vehicles unsafe. Additionally, these flaws cause a serious reduction in the vehicle's reliability and performance such that they fail to meet BMWNA's advertised standards. The ultimate result of these defects is that Plaintiff and all members of the Class did not receive the benefit of their bargain and/or overpaid for their vehicles, made lease payments that were too high and/or sold or will sell their vehicles for less than they should. Specifically, there is a design and/or manufacturing defect that is the subject of this case.

**B. Defective Auto Start Stop System**

26.  BMWNA develops, designs, manufactures, markets, advertises, distributes, and sells various models of vehicles, including the Subject Vehicles identified herein that were manufactured and/or equipped with Auto Start Stop systems.

27.  Plaintiff is informed and believes and based thereon alleges the Subject Vehicles contain an Auto Start Stop system comprised of defective components resulting in the failure of the engine of the Subject Vehicles to restart, creating a possibly life-threatening situation, and/or the premature wear and/or failure of engine components of the Subject Vehicles.

CLASS ACTION FIRST AMENDED COMPLAINT FOR DAMAGES

28.   The Auto Start Stop system in the Subject Vehicles for the corresponding model years, are and always have been defective, which, among other things, causes the failure of the engine of the Subject Vehicles to restart, creating a possibly life-threatening situation, and/or the premature wear and/or failure of engine components, substantially affecting the use, value and safety of the Subject Vehicles. The model and years are:

- Model Years 2011-2014 3-Series models;
- Model Years 2012-2014 5-Series models;
- Model Years 2012-2014 6-Series models;
- Model Years 2012-2014 Z4 models;
- Model Years 2012-2014 X3 models;
- Model Years 2013-2014 7-Series models;
- Model Years 2013-2014 X1 models; and
- Model Year 2014 X5 models

29.   As a part of BMWNA's advertising campaign, through its controlled dealership network, BMWNA distributed to the class members numerous pamphlets, brochures and specification sheets which emphasized or focused on the quality and safety of the Subject Vehicles here at issue.

30.   The written materials distributed and disseminated by Defendants in their advertising campaign(s) created express warranties as to the reliability, excellence and safety of the Subject Vehicles at issue and that the components of such vehicles are free from inherent risk of failure, particularly with regard to use and safety.  Such warranty was breached by the existence of the defect in the Subject Vehicles at issue and BMWNA's failure to warn consumers of its existence.

31.   These advertisements, due to the national scope and extent of Defendants multi-media campaign, were uniformly made to all members of the Class.  Class members' acts of leasing and/or purchasing the Subject Vehicles were consistent with basing such decisions upon such advertisements, and thus formed part of the basis for the transaction at issue.

32.   The Subject Vehicles manufactured and/or equipped with the defective Auto Start Stop systems were defective at the time of delivery and that complaint and warranty information that at all times relevant was readily available to Defendants indicates that the Auto Start Stop system on the

Subject Vehicles would cause the failure of the engine of the Subject Vehicles to restart, creating a possibly life-threatening situation, and/or the premature wear and/or failure of engine components, requiring frequent and costly engine repairs, reducing the Subject Vehicles' marketability and value.

33. Plaintiff is informed and believes, and based thereon alleges that the failure of the engine of the Subject Vehicles to restart is due, in part, to the defective engine components installed on the Subject Vehicles, thereby causing premature wear and failure of the engine components thereby unnecessarily subjecting Plaintiff, members of the class and the general public to frequent and costly engine repairs.

34. At all relevant times, BMWNA has been aware of the herein described defect in the Auto Start Stop system on the Subject Vehicles, and has consciously disregarded the rights and safety of Plaintiff, members of the Class and the general public in that numerous complaints about the defective Auto Start Stop system in the Subject Vehicles have been lodged with BMWNA as well as with the National Highway Traffic Safety Administration ("NHTSA"). Despite said knowledge, BMWNA, however, has failed to notify owners and lessees of the Subject Vehicles of the defects or the dangers associated with their continued operation as alleged herein. BMWNA's failure to notify Subject Vehicle owners and lessees and adequately repair this known defects is not only unlawful but dangerous.

35. At all relevant times, BMWNA has not fully disclosed to purchasers or lessees of the Subject Vehicles, information regarding the high incidence of the failure of the engine of the Subject Vehicles to restart as detailed herein, nor has it disclosed the true facts that: (1) BMWNA either knew or recklessly or negligently disregarded the existence and reasons for this inherent defect for years; and (2) starting with model year 2011, BMWNA attempted to make design changes and manufacture a safer Auto Start Stop system but has yet to attain such an Auto Start Stop system.

36. Plaintiff is further informed and believes, and based thereon alleges that in not correcting or warning of this defect, BMWNA has violated its own internal procedures, which require prompt investigation and thorough analysis of all potential defects and notification to vehicle owners and lessees describing the defect and a statement of the safety risks involved, as well as instructions relating to the correction of the defect if a defect is determined to exist.

CLASS ACTION FIRST AMENDED COMPLAINT FOR DAMAGES

37. Defendants' conduct, as fully described herein, is in violation of California Civil Code § 1795.90 et seq. (California's Secret Warranty Law) which was enacted to abolish "secret" warranties and practices as alleged herein. The term "secret warranty" is used herein to describe the practice by which an automaker, such as Defendant BMWNA, establishes a policy to pay for the repair of that defect without making the defect or the policy known to the public at large. A secret warranty is usually created when the automaker, such as BMWNA, realizes that a large number of its customers are experiencing a defect not otherwise covered by a factory warranty, and decides to offer warranty coverage to individual customers only if the customer complains about the problem first. The warranty is therefore considered "secret" because all owners are not notified of it. Instead, the automaker usually issues a service bulletin to its regional offices and/or dealers on how to deal with the defect. Because owners are kept in the dark about the cost-free repair, the automaker only has to reimburse those customers who complain loudly enough; the quiet consumer pays to fix the defect his or himself.

38. Section 1795.92 of the California Secret Warranty Law imposes several duties on automakers, including BMWNA, each of which is designed to do away with secret warranties.

39. Specifically, the California Secret Warranty law requires automakers to notify all eligible owners and lessees ("consumers") by first class mail, within 90 days of adoption, whenever they enact "any program or policy that expands or extends the consumer's warranty beyond its stated limit or under which [the] manufacturer offers to pay for all or any part of the cost of repairing, or to reimburse consumers for all or any part of the cost of repairing, any condition that may substantially affect vehicle durability, reliability, or performance[.]"

40. The California Secret Warranty Law also requires automakers, including BMWNA, to provide the New Motor Vehicle Board with a copy of the notice described in the preceding paragraph, so the public can view, inspect, or copy that notice.

41. Additionally, the California Secret Warranty Law requires automakers, including BMWNA, to advise their dealers, in writing, of the terms and conditions of any warranty extension, adjustment, or reimbursement program.

42. The California Secret Warranty Law also requires an automaker, such as BMWNA, to "implement procedures to assure reimbursement of each consumer eligible under an adjustment

CLASS ACTION FIRST AMENDED COMPLAINT FOR DAMAGES

program who incurs expenses for repair of a condition subject to the program prior to acquiring knowledge of the program."

43.   At all relevant times, BMWNA has taken the position that the customer has an option to disable the Auto Start Stop function in the Subject Vehicles.  As a result, BMWNA does not typically cover the repairs of the Auto Start Stop system and/or the costs of permanently disabling the Auto Start Stop system of the Subject Vehicles under its new car warranty (or any other warranty).

44.   Plaintiff is informed and believes, and based thereon alleges that BMWNA has, when the customers have complained loudly enough, offered to pay for all or any part of the cost of the repairs of the Auto Start Stop system and/or the costs of permanently disabling the Auto Start Stop system of the Subject Vehicles and therefore, BMWNA is obligated to comply with the provisions of the California Secret Warranty Law, but has not done so.  Moreover, by extending its new car warranty to cover the repairs of the Auto Start Stop system and/or the costs of permanently disabling the Auto Start Stop system to some customers and not others, BMWNA has expanded or extended the consumer's express warranty beyond its stated limit.

45.   Specifically, BMWNA did not notify Plaintiff, or any other owner or lessee of a Subject Vehicle of their right to seek a free repair, replacement or retrofit of the Auto Start Stop system, or to be reimbursed for the cost of repairs of the Auto Start Stop system and/or the costs of permanently disabling the Auto Start Stop system in these vehicles.

46.   It was only after Plaintiff complained vehemently that BMWNA performed repairs of the Auto Start Stop system.

47.   BMWNA, by and through its authorized dealerships, engaged in a nationwide conspiracy to cover up the Subject Vehicles' Auto Start Stop system defect by systematically refusing to verify the complaints during visits by Plaintiff and other Class members with the subject complaint.

48.   By failing to verify the complaints during these visits and provide repair orders BMWNA systematically deprived Plaintiff and other Class members of their lemon law rights by distorting the Subject Vehicles' repair histories.

49.   At all times relevant, Plaintiff is informed and believes, and based thereon alleges that BMWNA has not, and did not comply with the dealer notification provisions of the California Secret

CLASS ACTION FIRST AMENDED COMPLAINT FOR DAMAGES

Warranty Law nor has BMWNA sent a copy of a Service Bulletin to the New Motor Vehicle Board.

50.   At all times relevant, Plaintiff is informed and believes, and based thereon alleges that BMWNA has refused to provide the free repair, replacement or retrofitting of the Auto Start Stop system to owners of the affected vehicles and has refused to reimburse consumers who have paid to permanently disable the Auto Start Stop system in their vehicles except for some who complained enough.

51.   Knowing the truth and motivated by profit and market share, Defendants have knowingly and willfully engaged in the acts and/or omissions to mislead and/or deceive Plaintiff and others similarly situated.

52.   The defective Auto Start Stop system on the Subject Vehicles has resulted and will continue to result in significant loss and damage to the class members, including but not limited to, diminished use and reduced fair market value.

53.   Despite the Defendants' express representations that the Subject Vehicles would likely retain their value at a rate higher than competing vehicles and that the vehicles are "reliable," this has simply not occurred.  As a result of the problems with the Subject Vehicles as described herein, the value of the Subject Vehicles has been significantly diminished.   On the Internet and in other media outlets, hundreds of people have reported the problems they have experienced with their vehicles and the fact that they are unsafe and unreliable. There is little doubt that these reports have seriously diminished the resale value of the Subject Vehicles.

### C. Allegations Specific to Plaintiff

54.   On or about March 2, 2012, Plaintiff Khatuonian leased a new 2012 BMW 528I from a BMWNA dealership, New Century BMW. Prior to leasing her vehicle, Ms. Khatuonian had observed various BMW advertisements and had been provided brochures at the dealership describing her vehicle. Based on these advertisements, Ms. Khatuonian believed that the car she was leasing was safe, reliable, and free from defects. At the time of lease, Ms. Khatuonian was given the standard manufacturer's warranty, as set forth in the warranty manual provided to Plaintiff.

55.   Shortly after leasing the vehicle, Plaintiff's BMW would stall when accelerating from a stop.

56.   Plaintiff took the vehicle to a BMWNA dealership on three (3) different occasions and was

advised each that Plaintiff's concern could not be duplicated and that there was nothing wrong with the car.

57.   Plaintiff is informed and believes that the problems with her vehicle were the result of a defective Auto Start Stop system, which causes the vehicle to stall when accelerating from a stop as a result of the engine's failure to restart. Plaintiff alleges that despite bringing in her vehicle in for repair on over three (3) separate occasions, the Defendant refused and/or failed to replace or otherwise repair the defective Auto Start Stop system that it knew was defective.

58.   Furthermore, BMWNA has repeatedly taken the position that the customer has an option to disable the Auto Start Stop system in their vehicles. This directly contradicts BMWNA's advertising and brochures with regard to the Auto Start Stop function in the Subject Vehicles.

59.   Based on the foregoing, Ms. Khatuonian believes and alleges that when she leased the vehicle, she failed to receive the benefit of her bargain and paid more for the vehicle than the vehicle was worth. Ms. Khatuonian further alleges that the resale value of her vehicle has been significantly diminished as a result of the Defendant's conduct as alleged in this Complaint.

### D. The Affect on Resale Value

60.   Despite the Defendant's express representations that the Subject Vehicles would likely retain their value at a rate higher than competing vehicles and that the vehicles are "reliable," this has simply not occurred.

61.   As a result of the numerous problems with the Subject Vehicles as described herein and the high rate of the Auto Start Stop system malfunctions, the value of the Subject Vehicles has been significantly diminished.

62.   On the Internet and in other media outlets, hundreds of people have reported the problems they have experienced with their vehicles and the fact that they are unsafe and unreliable. There is little doubt that these reports have seriously diminished the resale value of the vehicles.

<div align="center">

VII

**TOLLING OF STATUTE OF LIMITATIONS**

</div>

63.   Any applicable statutes of limitation have been equitably tolled by BMWNA's affirmative acts of fraudulent concealment, suppression and denial of the true facts regarding the existence of the

1  inherent defects alleged herein. Such acts of fraudulent concealment include, but are not limited to

2  intentionally covering up and refusing to publically disclose critical internal memoranda, design plans,

3  studies, Notices of Action, Problem Detail Reports and other reports of failure and injury, as well as

4  affirmative misrepresentations made to NHTSA and people who called or otherwise contacted

5  BMWNA attempting to identify and resolve this defect. Through such acts of fraudulent concealment,

6  BMWNA was able to actively conceal from the public for years the truth about the defective design and

7  manufacture of the Auto Start Stop system on the Subject Vehicles, thereby tolling the running of any

8  applicable statute of limitations.

9      64. Defendants are estopped from relying on any statutes of limitation because of their

10  misrepresentation and fraudulent concealment of the true facts, as described herein, concerning the

11  Auto Start Stop system on the Subject Vehicles. Defendants were, at all times aware of the true nature

12  of the defects as described herein but at all times continued to manufacture and market the Subject

13  Vehicles despite this knowledge.

14  <center>**VIII**</center>

15  <center>**CLASS DEFINITIONS AND CLASS ALLEGATIONS**</center>

16      65. Plaintiff brings this action as a nationwide class pursuant to Federal Rule of Civil Procedure

17  23, on behalf of themselves and the following Class:

18         All Persons in the United States who are now or have been at any time owners of record

19         or lessees of any of the following types of vehicles: BMW Model Years 2011-2014 3-
       Series models; Model Years 2012-2014 5-Series models; Model Years 2012-2014 6-

20         Series models; Model Years 2012-2014 Z4 models; Model Years 2012-2014 X3
       models; Model Years 2013-2014 7-Series models; Model Years 2013-2014 X1 models;

21         and Model Year 2014 X5 models (the "Class").

22         Excluded from the Class are: Persons who validly and timely exclude themselves from the

23  Class; Persons who have settled with and released BMWNA from individual claims substantially

24  similar to those alleged in this matter; a member of BMWNA, its subsidiaries and affiliates, officers,

25  directors and employees; persons who have suffered personal injury as a result of the defects alleged;

26  insurers or other providers of extended service contracts or warranties for the vehicles in the Class; all

27  persons or entities claiming to be subrogated to the rights of a member of the Class; consumers and/or

28  businesses that have purchased a vehicle in the Class for use as rentals (i.e. fleet vehicles); consumers

and/or businesses that have purchased a vehicle in the Class deemed a total loss (i.e. salvage); United States residents that have purchased a vehicle in the Class in the United States but have since transported it outside the United States; and the Honorable Judge Wilson. Plaintiff reserves the right to amend the definition of the Class if discovery and/or further investigation reveal that the Class should be expanded or otherwise modified.

66. <u>Numerosity / Luminosity / Impracticality of Joinder:</u>     The members of the Class are so numerous that joinder of all members would be impractical. Plaintiff reasonably estimates that there are thousands of Class members who purchased the relevant vehicles. The members of the Class are easily and readily identifiable from information and records in Defendant's possession, control, or custody.

67. <u>Commonality and Predominance:</u>          There is a well-defined community of interest and common questions of law and fact that predominate over any questions affecting the individual members of the Class. These common legal and factual questions, which exist without regard to the individual circumstances of any Class member, include, but are not limited to, the following.

   a. Whether the Subject Vehicles were designed, manufactured, sold and/or otherwise equipped with the Auto Start Stop system that was of a poor, weak, or inferior in design and/or otherwise defective and unsafe;

   b. Whether Defendants knew of the defective nature of the Auto Start Stop system on the Subject Vehicles;

   c. Whether Defendants violated California consumer protection statutes;

   d. Whether Defendants breached their express warranties;

   e. Whether Defendants breached their implied warranties;

   f. Whether Defendants' Auto Start Stop system on the Subject Vehicles contained an inherent design and/or manufacturing defect;

   g. Whether the defect in the Auto Start Stop system on the Subject Vehicles caused and/or contributed to the failure of the engine of the Subject Vehicles to restart, creating a possibly life-threatening situation, when used for their intended purpose (driving);

   h. Whether the defect in the Auto Start Stop system on the Subject Vehicles caused and/or contributed to the premature wear and/or failure of engine components;

i. Whether the advertisements and statements made by Defendants were and are false and/or had and have had a tendency to deceive customers, by either failing to disclose the existence of an inherent defect or misrepresenting that the Subject Vehicles contained no defects;

j. Whether Defendants failed to adequately warn and/or notify class members and the general public regarding the defects of the Auto Start Stop system on the Subject Vehicles causing the failure of the engine of the Subject Vehicles to restart, creating a possibly life-threatening situation, and/or the premature wear and/or failure of engine components as described herein;

k. Whether Defendants have failed to notify all Subject Vehicle owners or lessees of the defect here at issue and repair or correct (or offer to repair or correct) all defective Auto Start Stop systems on the Subject Vehicles at no cost to the owners or lessees of the Subject Vehicles;

l. Whether Defendants are obligated to inform the Class of their right to obtain, free of charge, repair and replacement of the defective Auto Start Stop system components on the Subject Vehicles;

m. Whether Defendants adequately informed Dealers of the remedies to the design or defect as described herein;

n. Whether Defendants are required to provide the New Motor Vehicle Board with a copy of BMWNA's Service Bulletin(s), if any, concerning the remedies to the design or defect as described herein (or the information contained in the bulletin(s)) so that the public could have access to it;

o. The nature and extent of Defendants implied warranty of merchantability for the Auto Start Stop system;

p. Whether BMWNA's warranty to repair defects in the Subject Vehicles was part of the basis of the bargain as between BMWNA and members of the Class;

q. Whether the presence of the defective Auto Start Stop systems in the Subject Vehicles is an unlawful, unfair and/or "fraudulent" business act or practice within the meaning of the Business and Professions Code §§ 17200 *et seq.*;

r. Whether Defendants concealed from and/or failed to disclose to Plaintiff and the Class the true defective nature of the Auto Start Stop systems;

s. Whether Defendants had a duty to Plaintiff and the Class to disclose the defective nature

CLASS ACTION FIRST AMENDED COMPLAINT FOR DAMAGES

of the Auto Start Stop systems;

t. Whether the facts concealed and/or otherwise not disclosed by Defendants to Plaintiff and the Class are material facts;

u. Whether Defendants knew that the Auto Start Stop systems are defective, would result in the failure of the engine of the Subject Vehicles to restart, creating a possibly life-threatening situation, and/or the premature wear and/or failure of engine components after normal use, and thus the Subject Vehicles were not suitable for use as passenger vehicles, and otherwise are not as warranted and represented by Defendants;

v. Whether Defendants knew or reasonably should have known about these inherent defect(s);

w. When Defendants learned of this inherent defect;

x. Whether Defendants continued to lease/sell the Subject Vehicles with the defective Auto Start Stop systems as alleged herein despite their knowledge and/or reckless or negligent disregard of this inherent defect;

y. Whether the class members are entitled to damages in terms of cost of replacement (or repair) of the defective Auto Start Stop systems on the Subject Vehicles and any out-of-pocket expenses incurred in connection therewith, and if so, the nature and amount of such damages;

z. Whether Plaintiff and the Class are entitled to recover damages and the proper measure of damages;

aa. Whether Plaintiff and the Class are entitled to equitable relief, including but not limited to restitution;

bb. Whether Plaintiff and the Class are entitled to declaratory relief sought herein;

cc. Whether Plaintiff and the Class are entitled to injunctive relief sought herein;

dd. Whether Plaintiff the Class are entitled to punitive damages and, if so, the amount of such exemplary damages;

ee. Whether the defective Auto Start Stop systems caused the amount paid for the purchase or lease of the Subject Vehicles to be less than the fair market value of those vehicles; and

ff. Whether there is a difference between the fair market value of the Subject Vehicles and

1  the actual value of those vehicles given the presence of the defective Auto Start Stop systems.

2  68.  Typicality: The Plaintiff's claims are typical of the Class in that Plaintiff and the Class all

3  suffered damages as a direct and proximate result of the same wrongful practices that the Defendant

4  engaged in. Plaintiff's claims arise from the same practices and course of conduct that give rise to the

5  Class members' claims. Plaintiff's claims are based upon the same legal theories as the Class members'

6  claims. The only difference between the Plaintiff's and Class members' claims would lie in the amount

7  of damages sustained, which could be determined readily and does not bar class certification.

8  69.  Adequacy: Plaintiff will fully and adequately protect the interests of the members of the

9  Class and has retained class counsel who are experienced and qualified in prosecuting class actions,

10  including consumer class actions and other forms of complex litigation. Neither the Plaintiff nor her

11  counsel have interests which are contrary to, or conflicting with, those interests of the Class.

12  70.  Superiority:A class action is superior to all other available methods for the fair and efficient

13  adjudication of this controversy because, *inter alia*: it is economically impracticable for members of the

14  Class to prosecute individual actions; prosecution as a class action will eliminate the possibility of

15  repetitious and redundant litigation; and, a class action will enable claims to be handled in an orderly,

16  expeditious manner.

### FIRST CAUSE OF ACTION

### BREACH OF EXPRESS WARRANTY

19  71.  Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of the

20  Class Action First Amended Complaint for Damages.

21  72.  BMWNA's written representations in the owner manual(s), warranty manual(s), sales

22  brochures, pamphlets and other writings disseminated by BMWNA in the promotion, marketing and

23  sales of the Subject Vehicles constitute an express warranty and/or warranties to Plaintiff and the Class

24  members.

25  73.  By BMWNA's advertising campaign(s) which focused on its vehicles being free of defects,

26  including but not limited to the Subject Vehicles being "the ultimate driving machine," "sheer driving

27  pleasure," "the ultimate driving experience," "efficient," "intelligent," and specifically referring to the

28  Auto Start Stop system as a "clever way to save fuel" and "reduce fuel consumption and emissions," as

printed in their product brochures, pamphlets and media and which focused on excellence, reliability and safety of these vehicles, BMWNA expressly warranted that such vehicles were free from inherent and latent defects.

74.   For each of the Subject Vehicles at issue, BMWNA issued a standardized express written warranty which covers the base vehicle, including without limitation, the engine system, and warranted that the vehicles were free of defects.  Applying any BMWNA warranty limitation period to avoid the need to repair this particular defect would be unconscionable in that, *inter alia*, the vehicles at issue contain an inherent latent defect which could arise at any time, the defect was already present at the time of delivery, BMWNA was either aware of or consciously and/or recklessly disregarded this defect which could not be discovered by Plaintiff and members of the class at the time of such purchase or lease, and purchasers or lessees lacked any meaningful choice with respect to the warranty terms.

75.   As set forth above, the written warranty provided to Plaintiff and the Class specifically identifies that, if their vehicle fails to operate in a safe and reliable manner, Defendant would make all necessary repairs to and/or replacement of any defective parts found, during the vehicle's warranty period. Additionally, Defendant's advertising as referenced herein, warranted that the Subject Vehicles would perform to certain performance standards with respect to the Auto Start Stop system and would be reliable and safe.

76.   Plaintiff and members of the Class submitted their Vehicles for warranty repairs to and/or replacement of a part due to the concerns described hereinabove. Defendant failed to comply with the terms of the express written warranty provided to each Class member, by failing and/or refusing to repair and/or replace the subject defective part under the vehicle's warranty as described herein and/or by altering the vehicle's software so that it does not perform to its warranted performance standards. With respect to Class members who did not submit their car for repair, their refusal is justified since the Defendant cannot and/or will not actually repair the Subject Vehicles as described herein.

77.   Defendants have and continue to breach said express warranties in the following ways, among others as follows:

     a.   At the time of manufacture and lease/sale of the Subject Vehicles, there existed an inherent, latent defect in the Auto Start Stop system;

      b.    The Auto Start Stop system on the Subject Vehicles was not free from defects;

      c.    The Auto Start Stop system on the Subject Vehicles was and is at all relevant times defective;

      d.    BMWNA has refused to take responsibility for the defective Auto Start Stop system on the Subject Vehicles, denying all liability or even the existence of the defect as described herein;

      e.    BMWNA has refused to correct or repair the defect at no charge to Plaintiff and others similarly situated, but instead has charged, demanded and/or otherwise collected monies to correct and repair the defective Auto Start Stop system or to merely permanently disable the Auto Start Stop system in the Subject Vehicles;

      f.    BMWNA has engaged in a nationwide conspiracy to cover up the Subject Vehicles' Auto Start Stop system defect by systematically refusing to verify the complaints and/or to document visits by Plaintiff and other Class members to authorized dealerships with the subject complaint;

      g.    By failing to verify the complaints and/or to document these visits and provide repair orders BMWNA has systematically deprived Plaintiff and other Class members of their lemon law rights by distorting the Subject Vehicles' repair histories; and

      h.    The Auto Start Stop system is not "efficient," "intelligent," "clever way to save fuel" and "reduce fuel consumption and emissions," and was defective at the time of manufacture, sale and delivery to Plaintiff and others similarly situated.

78.   The acts of Defendants, and each of them, in failing and/or refusing to repair and/or replace the vehicles during the warranty period so as to bring the vehicles into conformity with the express warranties, deprived Plaintiff and members of the Class of their rights guaranteed them under the express warranties offered by Defendants.

79.   As a direct and proximate result of the willful failure of Defendants, and each of them, to comply with their obligations under the express warranties, Plaintiff and members of the Class have suffered actual and consequential damages. Such damages include, but are not limited to, loss of the use and enjoyment of their Subject Vehicle, and a diminution in the value of the vehicle containing the defects identified herein. The precise amount of these damages is unknown at the present time but is in excess of the jurisdictional limits of this Court.

80.   Plaintiff provided notice to Defendant BMWNA of its breach as alleged herein on June 26, 2013.

81.   To date Defendants have failed to remedy their breach pursuant to Plaintiff's notice.

82.   As a result of Defendants' breach of express warranties as set forth above, Plaintiff and others similarly situated have suffered and will continue to suffer damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

83.   Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of the Class Action First Amended Complaint for Damages.

84.   In the course of purchasing and obtaining service of their respective BMWs, Plaintiff and Class members entered into agreements with BMWNA, and /or were otherwise in contractual privity.

85.   The agreements were subject to implied covenants of good faith and fair dealing, requiring that BMWNA conduct business with Plaintiff and the Class members in good faith and deal fairly and justly with them.

86.   BMWNA breached the implied covenants of good faith and fair dealing by selling Plaintiff and Class members BMWs that were equipped with defective Auto Start Stop systems, by abusing its discretion in the performance of the sales and service related contract(s), and by intentionally subjecting Plaintiff and the Class members to defects that were known and/or contemplated at the time of purchase. BMWNA further breached the implied covenants of good faith and fair dealing by denying the existence of known, documented, reported defects and problems, and making efforts to avoid service, repair, and replacement obligations.

## THIRD CAUSE OF ACTION

### BREACH OF THE MAGNUSON-MOSS WARRANTY ACT – EXPRESS WARRANTY

87.   Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of the Class Action First Amended Complaint for Damages.

88.   The Subject Vehicles and respective Auto Start Stop systems on the Subject Vehicles are "consumer products" as that term is defined by 15 U.S.C. § 2301(1).

-21-

89. Plaintiff and Class members are "consumers" as that term is defined by 15 U.S.C. § 2301(3).

90. BMWNA is a "supplier" as that term is defined by 15 U.S.C. § 2301(4).

91. BMWNA is a "warrantor" as that term is defined by 15 U.S.C. § 2301(5).

92. BMWNA provided Plaintiff and Class members with "written warranties" as that term is defined by 15 U.S.C. § 2301(6).

93. Section 15 U.S.C. § 2310(d)(1) provides that a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this title, or a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief in any court of competent jurisdiction in any state or in an appropriate District Court of the United States.

94. BMWNA breached its express warranties by selling BMW vehicles that had defective Auto Start Stop systems at the time of sale.

95. BMWNA further breached its express warranties by refusing to replace the defective parts.

96. In its capacity as supplier, warrantor, and service provider, and by the conduct described herein, any attempt by BMWNA to limit its express warranties in a manner that would exclude or limit coverage for the defective Auto Start Stop systems is unconscionable and any such effort to disclaim or limit liability for said defects is void.

97. As a result of Defendants' breach of express warranties as set forth above, Plaintiff and members of the class have suffered damages in an amount to be determined at trial, including but not limited to the cost of repair or retrofit of the Auto Start Stop system on the Subject Vehicles and any out-of-pocket expenses associated therewith. Plaintiff and members of the class are also entitled to an order of the Court requiring BMWNA to provide repair and replacement of the defective Auto Start Stop system on the Subject Vehicles.

98. Plaintiff and members of the Class are also entitled to a refund or reimbursement for all amounts they have paid to have the Auto Start Stop system repaired and/or retrofitted and seek any other legal or equitable relief to be determined at the time of trial.

///

///

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT

## CIVIL CODE § 1750 *et seq.*

99.   Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of the Class Action First Amended Complaint for Damages.

100.   The Subject Vehicles are "goods" within the meaning of California Civil Code § 1761(a), said vehicles having been purchased by Plaintiff primarily for personal, family, and household purposes.

101.   Plaintiff and each member of the Class are "consumers" within the meaning of California Civil Code § 1761(d), since the Subject Vehicles were purchased primarily for personal, family, and household purposes.

102.   Defendants are "persons" as defined by California Civil Code § 1761(c).

103.   The purchase of the vehicles were a "transaction" as defined in California Civil Code § 1761(e).

104.   The Consumer Legal Remedies Act ("CLRA"), codified as California Civil Code § 1750 *et seq.* prohibits the use of unfair or deceptive acts or practices in a transaction intended to result or which results in the sale or lease of goods to any consumer. Among the acts prohibited is representing or warranting that the goods are of a particular standard, quality, or grade, if they are of another. *See* California Civil Code § 1770(a)(7). The CLRA also prohibits advertising goods or services with intent not to sell them as advertised. *See* California Civil Code § 1770(a)(9).

105.   Plaintiff is informed and believes, and based thereon alleges, that the acts and practices described hereinabove, committed in California and throughout the United States, were intended to result in the sale or lease of motor vehicles to the consuming public, including to Plaintiff. Defendant's acts and practices violated, and continue to violate, the CLRA in at least the following respects:

   a.   In violation of Civil Code § 1770(a)(5), Defendants have represented that the Subject Vehicles have characteristics and benefits that they do not have;

   b.   In violation of Civil Code § 1770(a)(7), Defendants have represented that the Subject Vehicles are of a particular standard, quality, or grade when they are not;

-23-

c.    In violation of Civil Code § 1770(a)(9), Defendants have advertised the Subject Vehicles without an intent to sell them as advertised;

d.    In violation of Civil Code § 1770(a)(14), Defendants have misrepresented that a transaction confers or involves legal rights, obligations, or remedies of Plaintiff and other members of the Class concerning the Subject Vehicles when they were not;

e.    In violation of Civil Code § 1770(a)(18), Defendants have represented that the Subject Vehicles were supplied in accordance with previous representations when they were not; and

f.    In violation of Civil Code § 1770(a)(19), Defendants unlawfully inserted an unconscionable provision in the contract to purchase or lease the Subject Vehicles here at issue by inserting into such contracts provisions where the consumers purport to waive a right or benefit provided by law to obtain a repair or a retrofit of an inherent defect without a clear statement and consent to such provisions.

106.    The misrepresentations and omissions outlined herein are material in that they relate to the overall safety and performance of the vehicles and consumers had a full expectation that the Subject Vehicles would not exhibit drivability issues, that the vehicles were safe, that they would retain their value at a rate exceeding that of competing vehicles, that they were reliable, and that they would meet or exceed their published performance characteristics. No consumer would have purchased the Subject Vehicles if they had been provided true and accurate information about the defects and/or would have paid substantially less for the vehicles at the time of purchase. At all times mentioned herein, the Defendant had exclusive knowledge of the defects and actively concealed the defects from the public.

107.    As a direct and proximate result of Defendants violation of Civil Code § 1770 *et seq.*, Plaintiff and other Class members have suffered irreparable harm and monetary damages entitling them to both injunctive relief and restitution.  Plaintiff, on behalf of herself and on behalf of the Class, seeks damages and all other relief allowable under the CLRA.

108.    Defendants' wrongful conduct, as set forth above, was willful, oppressive, and malicious. Accordingly, Plaintiff and others similarly situated seek punitive damages against Defendants in an amount to deter Defendants from similar conduct in the future.

109.    Pursuant to California Civil Code § 1780(a)(2), Plaintiff seeks an order enjoining Defendant

-24-
CLASS ACTION FIRST AMENDED COMPLAINT FOR DAMAGES

from engaging in the unlawful, fraudulent and unfair business practices as alleged herein. This includes repairing the vehicles, such that the vehicles no longer constitute a safety hazard as described hereinabove.

110.   At all times mentioned herein, Plaintiff alleged that Defendant knew that the design of its Auto Start Stop system was defective and posed an unreasonable safety risk to the public. With the full knowledge of the facts identified herein, Defendant knowingly sold and continues to sell vehicles equipped with the defects to residents throughout California and the United States, while concealing and suppressing the nature and scope of the defects. Such concealment and suppression was done to maximize its profits and its market share, and to avoid a costly recall and/or the cost of replacing the Auto Start Stop systems of the affected vehicles.

111.   Pursuant to California Civil Code § 1780(a)(2), Plaintiff seeks an order enjoining Defendant from engaging in the unlawful, fraudulent and unfair business practices as alleged herein. This includes, but is not limited to, failing and/or refusing to cover repairs and/or replacement of the Auto Start Stop systems for each of the affected vehicles as identified hereinabove.

112.   Pursuant to Civil Code § 1782, Plaintiff provided notice to Defendants at least thirty days prior to filing this action for damages.

113.   On or about June 26, 2013, Plaintiff sent a demand letter to Defendant on behalf of herself and all other similarly situated individuals pursuant to California Civil Code § 1782. In the demand letter, Plaintiff demanded that the Defendant remedy the above referenced conduct on behalf of the Class within thirty (30) days.

114.   Thirty (30) days has expired and Defendant has refused to provide a remedy to Plaintiff or the Class.

115.   Defendants failed to make the showing required by Civil Code § 1782(c).

116.   As a result, Plaintiff seeks actual and punitive damages for violation of the CLRA.   In addition, pursuant to Civil Code § 1782(a)(2), Plaintiff and members of the Class are entitled to an order enjoining the above-described wrongful acts and practices of Defendants, providing restitution to Plaintiff and the Class, ordering payment of costs and attorneys' fees, and any other relief deemed appropriate and proper by the Court under Civil Code § 1780.

## FIFTH CAUSE OF ACTION

## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW

## BUSINESS AND PROFESSIONS CODE § 17200 *et seq.*

117. Plaintiff re-alleges and incorporates by reference as fully set forth herein all paragraphs of the Class Action First Amended Complaint for Damages.

118. Plaintiff brings this claim on behalf of herself and others similarly situated in her representative capacity as a private attorney general against all Defendants for their unlawful, unfair, fraudulent, untrue and/or deceptive business acts and/or practices pursuant to California Business and Professions Code § 17200 *et seq.* ("UCL"), which prohibits all unlawful, unfair and/or fraudulent business acts and/or practices.

119. Plaintiff asserts these claims as she is a representative of an aggrieved group and as a private attorney general on behalf of the general public and other persons who have expended funds that the Defendants should be required to pay or reimburse under the restitutionary remedy provided by California Business and Professions Code § 17200 *et seq.*

120. At all times mentioned herein, Plaintiff alleges that Defendants knew that the design of the Auto Start Stop system was defective and posed an unreasonable safety risk to the public, due to the sudden loss of power while being driven. Additionally, the Defendant knew that its attempt to hide from the public the problems with its defective Auto Start Stop system would significantly affect the vehicles' performance and prevent consumers from discovering the defective nature of the vehicles.

121. With full knowledge of the facts identified herein, Defendants knowingly sold and continue to sell vehicles equipped with the defective Auto Start Stop system to residents throughout California and the United States, while concealing and suppressing the nature and scope of the defects. Such concealment and suppression was done to maximize its profits and its market share, and to avoid a costly recall and/or the cost of replacing the defective Auto Start Stop system on each of the affected vehicles.

122. Additionally, Defendants in their advertising and marketing materials knowingly misrepresented the performance of the vehicles.

123. The business acts and practices of Defendants are unfair, unlawful, and deceptive within the

CLASS ACTION FIRST AMENDED COMPLAINT FOR DAMAGES

1   meaning of California Business and Professions Code § 17200 *et seq.*, in that such acts and practices

2   are deceptive and substantially damaging to consumers and contrary to public policy. Consumers,

3   including Plaintiff, who rely on the representations and warranties made, are injured when Defendants

4   fail to honor the warranty as prescribed herein, and due to the safety concerns that exist in the Subject

5   Vehicles.

6       124.   Defendants aggressively promoted and advertised their Subject Vehicles in an unlawful,

7   unfair, fraudulent, untrue and/or deceptive manner that is and was likely to deceive the public.

8       125.   Defendants falsely advised class members that the non-conformities exhibited by the Subject

9   Vehicles as outlined herein were unverified and did not constitute a defect.

10      126.   Defendants actively engaged in a custom and practice of encouraging failure to and/or failing

11  to document complaints by class members regarding the non-conformities exhibited by the Subject

12  Vehicles as outlined herein.

13      127.   Defendants actively engaged in a custom and practice of having the complaints documented

14  as "unverified" during the visits to the authorized dealerships. This was intended to deprive Plaintiff

15  and other Class members form their lemon law rights by distorting the Subject Vehicles' repair

16  histories.

17      128.   Defendants' misconduct as alleged in this action constitutes negligence and other tortious

18  conduct and this misconduct gave these Defendants an unfair competitive advantage over their

19  competitors.

20      129.   Defendants' conduct constitutes unfair acts or practices conducted in the course of

21  Defendants' respective businesses, and thereby constitutes violations of California Business and

22  Professions Code § 17200 *et seq.*  Defendants' conduct and intent to widely market the Subject

23  Vehicles to California consumers involved false and misleading advertising.  Such conduct offends the

24  established public policy of the State of California and is immoral, unethical, oppressive, unscrupulous

25  and substantially injurious.

26      130.   Pursuant to California Business and Professions Code § 17203 of the UCL, Plaintiff seeks an

27  order of this Court enjoining BMWNA from continuing to engage in unlawful, unfair or fraudulent

28  business practices, and any other act prohibited by the UCL. Plaintiff also seeks an order requiring

BMWNA to comply with the terms of the California Secret Warranty Law by (a) notifying Class Members of the defective Auto Start Stop system warranty; (b) providing free installation of the re-designed Auto Start Stop systems to Class Members, (c) notifying dealers of the facts underlying the Auto Start Stop problem and the terms of the warranty, (d) notifying the New Motor Vehicle Board of the Auto Start Stop system warranty; and (e) identifying and reimbursing Class Members who have paid for repairs and/or disabling of the Auto Start Stop system.   Plaintiff also seeks an order (i) enjoining BMWNA from failing and refusing to make full restitution of all moneys wrongfully obtained; and (ii) disgorging all ill-gotten revenues and/or profits earned or retained as a result of BMWNA's violations of the California Secret Warranty Law.

131.   As set forth, above, BMWNA has violated the California Secret Warranty Law.  As a direct and proximate result of BMWNA's conduct, BMWNA obtained secret profits by which it became unjustly enriched at Plaintiff's and the Class members' expense.

132.   Accordingly, Plaintiff seeks an order establishing BMWNA as a constructive trustee of the secret profits that served to unjustly enrich BMWNA, together with interest during the period in which BMWNA has retained such funds, and requiring BMWNA to disgorge those funds in a manner to be determined by the Court.

133.   In addition to the relief requested in the Prayer below, Plaintiff seeks the imposition of a constructive trust over, and restitution of, the monies collected and profits realized by Defendants.

134.   Defendants' conduct, as fully described herein, constitutes acts of untrue and misleading advertising and are, by definition, violations of California Business and Professions Code § 17200 *et seq.*

135.   As a direct and proximate result of the aforementioned acts, Defendants, and each of them, received monies expended by Plaintiff and others similarly situated who leased/purchased the Subject Vehicles.

136.   The unlawful, unfair, deceptive and/or fraudulent business practices and/or false and misleading advertising of Defendants, as fully described herein, present a continuing threat to members of the public to be injured by the Subject Vehicles equipped with the defective Auto Start Stop systems as alleged herein.

CLASS ACTION FIRST AMENDED COMPLAINT FOR DAMAGES

137.   Moreover, Defendants' unlawful and unfair business practices present a continuing and ongoing threat to the public in that Defendants will continue to mislead and deceive the public regarding the quality and nature of the affected vehicles, and in that Defendants will continue to fail to honor and/or refuse to honor the terms of the express warranties provided to the consuming public.

138.   Under California Business and Professions Code § 17203, Plaintiff seeks an order enjoining Defendants from engaging in the unfair and unlawful practices and acts identified herein. Said Code section also provides for equitable monetary relief so as to preclude the retention of all monies improperly obtained by Defendant as a result of such practices and acts.

WHEREFORE, Plaintiff prays for an order requiring Defendants to: (1) notify the Class and the general public of the defective Auto Start Stop system on the Subject Vehicles; and (2) provide, at no cost to owners or lessees of the Subject Vehicles, the retrofit or repair of the Auto Start Stop systems.

## **PRAYER**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated and also on behalf of the general public, prays for judgment against Defendants, and each of them jointly and severally, as follows:

A.  An order certifying this case as a class action and appointing Plaintiff and her counsel to represent the Class;

B.  For compensatory damages in an amount to be determined at trial;

C.  For statutory damages in an amount of not less than $1,000 per Plaintiff or Class member pursuant to California Civil Code § 1780(a)(1);

D.  For restitution as appropriate;

E.  For statutory pre-judgment interest;

F.  For punitive damages in an amount to deter Defendants from similar conduct in the future;

G.  For any additional and consequential damages suffered by Plaintiff and the Class;

H.  For reasonable attorneys' fees and the costs of this action;

I.  For declaratory and/or equitable relief under the causes of action stated herein; and

J.  For such other relief as this Court may deem just and proper.

///

CLASS ACTION FIRST AMENDED COMPLAINT FOR DAMAGES

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for herself and the Class on all claims so triable.

Dated this 4th day of December, 2013

LAW OFFICES OF HOVANES MARGARIAN

By _Hovanes Margarian_

Hovanes Margarian, Esq.
Attorney for Plaintiff
GAYANE KHATUONIAN
and all others Similarly Situated

CLASS ACTION FIRST AMENDED COMPLAINT FOR DAMAGES

## DECLARATION OF HOVANES MARGARIAN PURSUANT TO CIVIL CODE § 1780(c)

I, HOVANES MARGARIAN, declare as follows:

    1.    I am an attorney at law duly licensed to practice before all courts of the State of California, and am the principal at the Law Offices of Hovanes Margarian, one of the counsel of record for Plaintiff. I have personal knowledge of the matters set forth below and if called upon as a witness could and would competently testify thereto.

    2.    I am informed and believe that venue is proper in this court pursuant to Civil Code § 1780(c) based on the following facts:

    a.    Defendant has performed transactions at issue in this action, or has obtained financial benefit from such transactions, at all times relevant to this action, in Los Angeles, California; and

    b.    At all relevant times herein, Plaintiff resided in Los Angeles County in the State of California.

    WHEREFORE, I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this Declaration was executed this 4th day of December, 2013 at Sherman Oaks, California.

LAW OFFICES OF HOVANES MARGARIAN
13425 Ventura Boulevard, Suite 303
Sherman Oaks, CA 91423


By _____
Hovanes Margarian, Esq.
Attorney for Plaintiff
GAYANE KHATUONIAN
and all others Similarly Situated

CLASS ACTION FIRST AMENDED COMPLAINT FOR DAMAGES

### PROOF OF SERVICE

*GAYANE KHATUONIAN v. BMW OF NORTH AMERICA, LLC, et al.*
*CASE NO.: 2:13-CV-07975-SVW-SH (US District Court, Central District of California)*

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the County of Los Angeles, State of California; my business address is Law Offices of Hovanes Margarian, 13425 Ventura Boulevard, Suite 303, Sherman Oaks, CA 91423.

On the date below I served a true copy, with all exhibits, of the following document(s):
**CLASS ACTION COMPLAINT FOR DAMAGES,** on all interested parties in this action addressed as follows:

### SEE ATTACHED SERVICE LIST

☒ **(BY MAIL)**   By placing the envelope for collection and mailing following our ordinary business practices. I am readily familiar with the firm's practice of collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in Los Angeles, California in sealed envelopes with postage fully prepaid. I am aware that, on motion of the party served, service is presumed invalid if the postal cancellation or postage meter date is more than one day after the date of deposit for mailing in this affidavit.

☐ **(BY PERSONAL SERVICE)**   By placing the documents in an envelope or package addressed to the persons listed above and causing such envelope to be delivered by hand to the persons listed above.

☐ **(BY FEDERAL EXPRESS)**   By depositing copies of the above documents in a box or other facility regularly maintained by Federal Express with delivery fees paid or provided for.

☐ **(BY EXPRESS MAIL)**   By placing the above documents in the United States mail for Express Mail delivery at 13425 Ventura Boulevard, Suite 303, Sherman Oaks, CA 91423, in a sealed envelope addressed as above, with Express Mail postage thereon fully prepaid.

☐ **(BY FAX)**   By use of facsimile machine telephone number (818) 990-1418, at approximately _____a.m/p.m. I faxed a true copy to the addressee(s) listed above at the facsimile number(s) noted after the party's address. The facsimile machine I used complied with California Rules of Court, rule 2003 and no error was reported by the machine. Pursuant to California Rules of Court, rule 2006(d), I caused the machine to print a transmission record of the transmission. The transmission report, which sets forth the date and time for the transmission was properly issued by the transmitting facsimile machine.

☐ **(BY ELECTRONIC TRANSMISSION)**   By sending a file of the above document(s) via electronic transmission (e-mail) at _____a.m./p.m. using e-mail address (___@margarianlaw.com) to the e-mail address designated for each party identified above. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ **(STATE)**   I declare, under penalty of perjury under the laws of the State of California, that the above is true and correct.

☒ **(FEDERAL)**   I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on December 4, 2013, at Los Angeles, California.

*Hovanes Margarian*

**SERVICE LIST**

*GAYANE KHATUONIAN v. BMW OF NORTH AMERICA, LLC, et al.*
*CASE NO.: 2:13-CV-07975-SVW-SH (US District Court, Central District of California)*

Lewis Brisbois Bisgaard & Smith LLP
Eric Y. Kizirian, Esq.
Eric.Kizirian@lewisbrisbois.com
Michael K. Grimaldi, Esq.
Michael.Grimaldi@lewisbrisbois.com
221 North Figueroa Street, Suite 1200
Los Angeles, CA 90012
(213) 250-1800 (tel.)
(213) 250-7900 (fax)

Attorneys for Defendant
BMW of North America, LLC